**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID GARCIA | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:18-CV-227(JCH) |
| v. | : | |
| | : | |
| TIM SCHWEITZER, ET AL., | : | JULY 22, 2019 |
| Defendants. | : | |

**AMENDED RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 17)**[*]

## I.      INTRODUCTION

Plaintiff, David Garcia ("Garcia"), brings this action against Judicial Marshals Tim

Schweitzer ("Schweitzer") and Ezekiel Carr ("Carr"), alleging the Marshals used

excessive force in violation of his Fourth and Fourteenth Amendment rights.[1]  See

Complaint ("Compl.") (Doc. No. 1) at 1-2.  He brings this action pursuant to sections

1983 and 1988 of Title 42 of the United States Code.  Id. at 2.  Marshals Schweitzer and

Carr have moved for summary judgment.  See Motion for Summary Judgment ("Mot. for

Summ. J.") (Doc. No. 17).

For the reasons that follow, Defendants' Motion for Summary Judgment is

denied.

---

[*] This Amended Ruling is issued to correct typographical error.

[1] Because Garcia was a pre-trial detainee at the time of the events in question, the court considers only the excessive force claim under the Fourteenth Amendment. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) ("We have said that 'the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'") (citing Graham v. Connor, 490 U.S. 386, 396 (1989).  The Fourth Amendment governs excessive force claims in the search and seizure context, before arraignment.  See Graham, 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard.")

## II.    BACKGROUND

On February 13, 2015, Garcia appeared as a pretrial detainee before Judge Iannotti in the Milford Courthouse on a pending charge for assault on an officer. See Defendants' Rule 56(a) Statement ("Defs.' 56(a)") (Doc. No. 17-2) ¶ 1.  He appeared in handcuffs and leg restraints. Id. ¶ 2.

At the hearing, Garcia sought a new public defender.  Id. ¶ 4.  Throughout his appearance, Garcia spoke over Judge Iannoti. Id. ¶ 5.  At one point, Marshal Carr ordered Garcia to move up closer to the table, and Garcia replied, "Don't put your hands on me."  Id. ¶ 7.  Garcia and Judge Iannotti went back and forth, and the Judge stated, multiple times, that it was clear that Garcia would continue to "talk over [the Judge]" or "interrupt" him. Id. ¶¶ 10-11.  The Judge ultimately continued the case to a later date to allow Garcia to meet with the head of public defender services in Milford to attempt to get a new public defender assigned to him.  Id. ¶ 12.  After Judge Iannotti announced he would continue the case, Marshals Schweitzer and Carr escorted Garcia to a holding area near the courtroom.  Id. ¶ 18.  Garcia's leg shackle had come undone during the hearing, and the Marshals intended to reapply it in the holding area.  Id. Garcia resisted from the hold Defendant Schweitzer had on Garcia's right arm while he was escorted to the holding area.  Id. ¶¶ 19.

Once Garcia was in the holding area, Marshals Schweitzer and Carr put him into a seat to reapply the leg shackle.  Id. ¶ 20.  After a few moments of trying to reapply the shackle in the holding area, Marshal Schweitzer called for additional marshals, id., ¶ 23, who arrived shortly thereafter.  Id. ¶ 27.

Garcia denies that he resisted the Marshals' attempts to reapply the shackle.

Plaintiff's 56(a) Statement ("Pl.'s 56(a)") (Doc. No. 18-1) ¶¶ 22, 25.

Before the other marshals arrived, Schweizer told Carr to bring Garcia to the

prone position onto the floor, which Carr did.  Defs.' 56(a) ¶ 26.

Video evidence, submitted as Exhibit D to the Motion for Summary Judgment,

shows that the Marshals first put Garcia into a chair by grabbing him near his neck and

pushing him down.  See Mot. for Summ. J., Ex. D., at 14:31:42PM.  After a few

seconds, the Marshals pulled Garcia out of his chair and pushed him toward the floor.

Id. at 14:32:54PM.  When Garcia was on the floor, one marshal held Garcia down while

the other grabbed at Garcia's legs to reapply the shackle.  Id. at 14:33:10PM.

Once Garcia was on the floor in the prone position, the Marshals reapplied the

leg shackle.  Defs.' 56(a) ¶ 28.  They brought Garcia back to his feet and escorted him

to the cellblock.  Id. ¶ 29.  No additional force was applied.  Id. ¶ 30.

## III.   STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that the party is

entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016).

Once the moving party has met its burden, the nonmoving party "must set forth specific

facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and

present "such proof as would allow a reasonable juror to return a verdict in [its] favor,"

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  "An issue of fact is

genuine and material if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d 155, 162 (2d Cir. 2016).  A moving party is "entitled to judgment as a matter of law" on an issue if that party bears the burden of proof on the issue and the undisputed facts meet that burden, or if the non-moving party bears the burden of proof and the moving party shows "that there is an absence of evidence in the record to support the nonmoving party's position."  <u>Knight v. City of New York,</u> No. 16-cv-7888 (RJS), 2019 WL 95480 (S.D.N.Y. Jan. 2, 2019) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  <u>LaFond v. Gen. Physics Servs. Corp.</u>, 50 F.3d 165, 175 (2d Cir. 1995).  "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted."  <u>F.D.I.C. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010) (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. <u>Cortes v. MTA N.Y. City Transit</u>, 802 F.3d 226, 230 (2d Cir. 2015) (quoting <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997)).

Garcia filed a short complaint, alleging that he had been "assaulted" by the Marshals.  Compl. ¶¶ 7-8.  Marshals Schweitzer and Carr responded with an Answer, and then filed this Motion for Summary Judgment.  <u>See</u> Answer (Doc. No. 13); Mot. for Summ. J.  The Motion for Summary Judgment advances three arguments: first, that the court should dismiss the action on the pleadings for failure to state a claim upon which

relief can be granted; [2] second, that Marshals Schweitzer and Carr are entitled to

"quasi-judicial immunity;" and third, that Marshals Schweitzer and Carr are entitled to

qualified immunity as a matter of law.  See Mot. for Summ. J. at 1.

IV.    DISCUSSION

      A.     Quasi-Judicial Immunity

Marshals Schweitzer and Carr argue that they are entitled to quasi-judicial

immunity because they were acting as "extensions of Judge Iannotti" when they

transported Garcia to the holding area, sat him down, moved him into the prone

position, and reapplied the leg shackle.  Mot. for Summ. J. at 12.  Judges are entitled to

absolute immunity for actions taken in their judicial capacity.  See, e.g., Mireles v.

Waco, 502 U.S. 9 (1991) (per curium).  Such immunity is defined not by the person

holding it, but by "the nature of the act taken, i.e., whether it is a function normally

performed by a judge."  Id. at 288.  Courts have extended quasi-judicial immunity to

individuals who "act[ ] as an arm of the court" and perform tasks that are integral to the

judicial process.  See DeSouza v. Kennedy, No. 3:16-CV-01126, 2017 WL 3431393, at

---

2 In their Motion for Summary Judgment, Marshals Schweitzer and Carr argue that Garcia has failed to plausibly state a claim for relief and urge the court to dismiss the case under Federal Rule of Civil Procedure 12(b)(6).  See Mot. for Summ. J. at 7-10.  They cite cases recognizing that "a trial judge may dismiss for failure to state a cause of action upon [a] motion for summary judgment."  Id. at 8 (citing Myers v. Moore, 326 F.R.D. 50, 58 (S.D.N.Y. 2018) (quoting Risco v. McHugh, 868 F.Supp.2d 75, 106 n.45 (S.D.N.Y. 2012) (quoting Schwartz v. Compagnie Gen. Transatlantique, 405 F.2d 270, 273 (2d Cir. 1968))).

These cases outline that courts may, but are not required to, apply the Rule 12(b)(6) standard in dismissing a Complaint on the pleadings.  Here, both parties have asked the court to consider matters outside the pleadings, including affidavits and video evidence submitted by the Marshals Schweitzer and Carr.  See Mot. for Summ. J., Exh. A, D; Plaintiff's Opposition to Motion for Summary Judgment (Doc. 18).  The court has considered that evidence and will not apply the Rule 12(b)(6) standard, but will address Marshals Schweitzer and Carr's motion as one for summary judgment.

*5 (D. Conn. Aug. 9, 2017) (collecting cases).  As Marshals Schweitzer and Carr note,

directing court officers to bring a particular person before the judge for a judicial

proceeding can be considered a judicial action, entitled to absolute immunity.  See Mot.

for Summ. J. at 11 (arguing that "people who act in accordance with a court order are

absolutely immune" from damages).

In this case, however, Marshals Schweitzer and Carr offer no evidence that

Judge Iannotti ordered them to remove Garcia to the holding room with the force they

used, or, once in the holding room, to use force or hold him in the prone position.  At the

end of the hearing, Judge Iannotti simply said, "Let's go."  Defs.' 56(a), ¶ 13.  That

statement, even if interpreted as an order to remove Garcia from the courtroom, cannot

reasonably be interpreted as an order to treat him with excessive force.  Compare

Mireles, at *287 (noting that Judge Mireles had "ordered the police officer defendants to

forcibly and with excessive force seize and bring plaintiff into his courtroom.")  Any

action taken in the holding room was not taken under the Judge's supervision or as an

extension of his order, nor was it "integral to the judicial process."  DeSouza, 2017 WL

3431393, at *5.  Therefore, Marshals Schweitzer and Carr's actions while in the holding

area are not entitled to absolute judicial immunity.

      B.     Qualified Immunity

Section 1983 of Title 42 of the United States Code provides a civil cause of

action for damages against any person who, under color of law, violates an individual's

constitutional or statutory rights. See 42 U.S.C. § 1983.  Here, Garcia alleges that

Marshals Schweitzer and Carr's treatment violated his constitutional right to be free

from excessive force amounting to punishment, protected by the Due Process Clause of

the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520 (1979); United States v.

Walsh, 194 F.3d 37 (2d Cir. 1999).  As the Second Circuit explained in Edrei v. Maguire,

892 F.3d 525 (2018), the right to be free from excessive force, "most commonly

associated with the Fourth and Eighth Amendments, can also arise under the

Fourteenth."  892 F.3d at 533 (citing Graham v. Connor, 490 U.S. 386, 394 (1989);

Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998)).  The "touchstone" of due process,

after all, is the "protection of the individual against arbitrary action of government," and

the use of excessive force violates that core protection.  Id. (citing Wolff v. McDonnell,

418 U.S. 539, 558 (1974)).  Thus, while the Fourth Amendment applies to pre-

arraignment search and seizure and the Eighth Amendment applies to post-conviction

punishment, the Fourteenth Amendment governs excessive force claims brought by

pretrial detainees, like Garcia.  See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473

(2015) ("We have said that 'the Due Process Clause protects a pretrial detainee from

the use of excessive force that amounts to punishment.'") (citing Graham v. Connor,

490 U.S. 386, 396 (1989)).

Marshals Schweitzer and Carr argue that, even if Garcia can establish a

Fourteenth Amendment violation, they are entitled to qualified immunity as a matter of

law.  See Mot. for Summ. J. at 13.  A defendant bears the burden of establishing

qualified immunity as a matter of law.  Gomez v. Toledo, 446 U.S. 635 (1980).  A court

assessing a qualified immunity defense must consider two questions: "(1) whether the

evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a

statutory or constitutional right, and (2) whether that right was clearly established at the

time of the alleged violation."  See Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010)

(citation omitted).  The court exercises its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first," Pearson v. Callahan, 555 U.S. 223, 236 (2009), and will begin by considering whether the evidence suffices to establish a violation of a constitutional right.

           1.      Violation of a Constitutional Right

In order to make out an excessive force claim under the Fourteenth Amendment, Garcia must show that the Marshals intentionally applied force, and that the degree of force was "objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (2015).

In Kingsley, Justice Breyer explained that each Fourteenth Amendment excessive force claim involves "two separate state-of-mind" questions: first, whether force was intentionally applied, and second, whether it was "excessive." Id. at 2472. The first can only be assessed with an objective standard: force is either inflicted or it is not, and "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind" to inflict the force. Id.  This first prong is not at issue here, where both parties agree that the officers intentionally took Garcia to the holding room, sat him down, moved him into the prone position, and kept him in that position while the leg shackle was reapplied.

The second question "concerns the defendant's state of mind with respect to whether his use of force was 'excessive.'" Id.  That assessment, the Supreme Court held in Kingsley, is also objective. The court's focus is not on whether the officer has the intent or motive to punish, but on whether the force was "objectively unreasonable." Id. at 2473.  Objective reasonableness turns on the "facts and circumstances of each

particular case," based on the perspective of a reasonable officer on the scene.  Id.

(quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  The Kingsley Court reiterated

several "considerations" that may "bear on the reasonableness" of the force used,

including:

> the relationship between the need for the force used; the extent of the
> plaintiff's injury; any effort made by the officer to temper or to limit the
> amount of force; the severity of the security problem at issue; the threat
> reasonably perceived by the officer; and whether the plaintiff was actively
> resisting.

Id. (quoting Graham, 490 U.S. at 396).

Following the Kingsley standard, on a Motion for Summary Judgement, Garcia

must "set forth specific facts showing that there is a genuine issue" over whether the

force used against him was objectively reasonable, given the facts and circumstances

of his case.  Anderson, 477 U.S. at 256.  On the record before the court, there is a

genuine issue of material fact regarding those facts and circumstances.  While Marshals

Schweitzer and Carr argue that Garcia resisted their efforts to reapply his leg shackle,

Garcia denies that he resisted.  Compare Defs.' 56(a), ¶¶ 22, 25; Pl.'s 56(a), ¶¶ 22, 25.

Neither party disputes that Garcia's hands were restrained in handcuffs throughout the

interaction.  See Defs.' 56(a)  ¶ 2.  Crediting Garcia's version of events as it must do on

a Motion for Summary Judgement, the court concludes that a reasonable juror could

find that Garcia was restrained and not resisting at the time Marshals Schweitzer and

Carr pushed him into the chair and onto the floor, and that the Marshals' use of force

was objectively unreasonable.  See Kingsley, 135 S.Ct. at 2473 (describing "whether

the plaintiff was actively resisting" as a consideration that "may bear on the

reasonableness or unreasonableness of the force used");  Knight v. City of New York,

2019 WL 95480, at *4 (concluding that a reasonable jury could find the use of pepper

spray against an individual who was not actively resisting could constitute unreasonable

force).  Therefore, a reasonable juror could conclude that a constitutional right was

violated under the first prong of the qualified immunity inquiry.

        2.      Clearly Established

Marshals Schweitzer and Carr argue that, even if Garcia establishes a violation

of a constitutional right, they are entitled to qualified immunity as a matter of law

because such a right was not "clearly established at the time of the alleged violation."

See Mot. for Summ. J. at 20.  See also Tracy v. Freshwater, 623 F.3d 90 (2010); Kisela

v. Hughes, 138 S.Ct. 1148, 1152 (2018).  For a right to be clearly established, it must

have been "clear to a reasonable officer that his conduct was unlawful in the situation

he confronted."  Kingsley, 135 S.Ct. at 2474 (citing Saucier v. Katz, 533 U.S. 194, 202

(2001)).

The focus of this second prong of the qualified immunity inquiry is on "whether

the officer had fair notice that her conduct was unlawful."  Kisela, 138 S.Ct. at 1152

(quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)).  Although the

Supreme Court's "caselaw does not require a case directly on point for a right to be

clearly established," id. (citing White v. Pauly, 127 S.Ct. 548, 551 (2017) (per curiam)),

courts must not define the right at a "high level of generality."  City of Escondido v.

Emmons, 129 S.Ct. 500, 503 (2019) (per curiam) (quoting Kisela, 138 S.Ct. at 1152).

Instead, the court must formulate a clearly established right with regards to the

particular circumstances of a given case. Id.

The parties disagree over whether a pre- or post-Kingsley standard must be applied to define "the nature of the right" that must be "clearly established" to overcome a qualified immunity defense.  See Mot. for Summ. J. at 16; Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 18) at 3.  The difference is relevant because, Marshals Schweitzer and Carr argue, a pre-Kingsley test would require Garcia to show malicious intent.  Mot. for Summ. J. at 16-17.  Marshals Schweitzer and Carr are correct to point out that, in cases reviewing events that occurred before the Kingsley decision in 2015, the Second Circuit has applied the Kingsley standard under the first prong of the qualified immunity test, to determine whether a right was violated, but applied a pre-Kingsley standard to the second prong, to determine whether the right was "clearly established."  See Edrei v. Maguire, 892 F.3d 525, 537 (2d Cir. 2018) ("Applying Kingsley's analysis to the allegations at hand, we conclude that the plaintiff's complaint states a Fourteenth Amendment violation") (emphasis added); id. at 539 ("[B]ecause officers cannot have fair warning of rights that are not yet established, we look to precedent in existence at the time of the events. Here, this means that, for the purposes of "clearly established law," we apply the Fourteenth Amendment analysis [in place at the time of the events], not the Supreme Court's 2015 decision in Kingsley.") (emphasis added).

Marshals Schweitzer and Carr argue that the pre-Kingsley standard applies to determine whether the right was clearly established, and that, under that standard, the force must have been "wanton" in order for the marshals to violate a clearly established right.  See Mot. for Summ. J. at 17.  However, even though the pre-Kingsley standard applies, the Marshal's intent is not a necessary element of the excessive force claim.

As the Second Circuit explained in Edrei, evidence of subjective intent "has never been necessary for a Fourteenth Amendment excessive force claim." Id. at 540.  Regardless of whether a pre- or post-Kingsley standard applies, the court need not define the "clearly established" right by reference to the Marshals' subjective intent.

Marshals Schweitzer and Carr argue that, at the time of the events in question, there was no clearly established right to be free from "excessive force where an official utilizes force to apply restraints to a pretrial detainee."  See Mot. for Summ. J. at 18. However, "focus[ing] on the officers' professed objective" leads to an overly narrow definition of the right in question.  See Edrei, 892 F.3d at 539 (declining to adopt the defendants' framing of the clearly established right in question where that definition referenced the defendant's motivations).  Instead, Second Circuit precedent instructs the court to "[d]efin[e] the Fourteenth Amendment right according to the particular circumstances of a case, looking to "the precipitating events, the government interest at issue, the degree of force used, and the reasonably anticipated consequences of the government action."  Edrei, 892 F.3d at 539 (internal quotation omitted).

Several Second Circuit cases clearly establish the Fourteenth Amendment right of an individual who is not resisting to be free from excessive force.[3]  As the Kingsley court reiterated, for a right to be clearly established, it must have been "clear to a

---

[3] Marshals Schweitzer and Carr point to City of Escondido, Cal. v. Emmons, 139 S.Ct. 500 (2019), for the proposition that courts cannot define the clearly established right at "a high level of generality," e.g., as "the right to be free from excessive force." 139 S.Ct. at 503.  The court agrees. However, the Supreme Court in Emmons reaffirmed that the proper inquiry should focus on the facts before the court, including whether the individual was engaged in passive resistance.  Id. at 503 (distinguishing the case on which the Ninth Circuit had relied as one involving "police force against individuals engaged in passive resistance.")  The analysis in the Second Circuit cases considered above, which considers whether an individual was subdued or resisting, is more narrowly defined.

reasonable officer that his conduct was unlawful in the situation he confronted."

Kingsley, 135 S.Ct. at 2474 (citing Saucier v. Katz, 533 U.S. 194, 202 (2001)).  In Edrei,

the Second Circuit concluded that a "reasonable officer" in 2014 would have known that

"subjecting non-violent protestors to pain and serious injury" would violate the

Fourteenth Amendment.  See Edrei, 892 F.3d at 544.  The right to be free from

excessive force when one is not resisting is not limited to civil protestors.  Courts in the

Second Circuit have also acknowledged that it extends to pre-trial detainees who are

"already handcuffed and restrained," Toliver v. New York City Dep't of Corr., 202 F.

Supp. 328,335 (S.D.N.Y. 2016), regardless of the exact method of force employed,

Garcia v. Dutchess County, 43 F.Supp.3d 281, 297 (S.D.N.Y. 2014) (explaining that

where the plaintiff "no longer posed a threat" and the use of force was "significant," force

was excessive regardless of whether it was applied by taser, pepper spray canister, or

other means).

In fact, in Rogoz v. City of Hartford, 796 F.3d 236 (2d Cir. 2015), the Second

Circuit specifically found that no reasonable officer "could reasonably have believed it

permissible . . . to jump on the back of a prone and compliant suspect gratuitously."

Rogoz, 796 F.3d at 251;  see also Tracy v. Freshwater, 623 F.3d 90, 98 (2010)

(concluding that "a reasonable juror could find that the use of pepper spray deployed

mere inches away from the face of a defendant already in handcuffs and offering no

further active resistance constituted an unreasonable use of force" and concluding that

summary judgment was inappropriate).[4]  These cases make clear that right of a

subdued individual, who was not resisting, to be free from gratuitous force was "clearly

established" at the time of Garcia's interaction with Marshals Schweitzer and Carr.

Marshals Schweitzer and Carr have failed to meet their burden to establish that

they are entitled to qualified immunity as a matter of law.  With regards to the first prong

of the qualified immunity analysis, viewing the evidence in the light most favorable to the

non-moving party, there is a genuine issue of material fact as to whether a violation of

Garcia's constitutional rights occurred.  Considering the second prong, the right of an

individual, who is not resisting, to be free from unreasonable force was clearly

established at the time of the incident at issue here.  Because the undisputed facts fail

to meet the burden of proof on the issue of qualified immunity, Marshals Schweitzer and

Carr are not entitled to summary judgment as a matter of law.  Knight v. City of New

York, No. 16-cv-7888 (RJS), 2019 WL 95480 (S.D.N.Y. Jan. 2, 2019) (citing Celotex

Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

## V.    CONCLUSION

Marshals Schweitzer and Carr have failed to establish that there are no genuine

issues of material fact and that they are entitled to judgment as a matter of law.  On the

---

[4] Although several of these cases occur in the Fourth Amendment context, the Second Circuit cited those very same cases in Edrei for support for its conclusion that police had violated a "clearly established" right to be free from excessive force under the Fourteenth Amendment.  See Edrei, 892 F.3d at 542 (citing Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002) ("Although the Fourth Amendment cases are not on all fours with [plaintiff's] claim under the Fourteenth Amendment, they are instructive . . .").  Numerous Supreme Court and Second Circuit cases have "cross-polinate[d]" between the Fourth, Eight, and Fourteenth Amendment contexts.  Id. at 542, n.5.

record before the court, they have failed to establish that they are entitled to either

judicial nor qualified immunity as a matter of law.

For the foregoing reasons, the Motion for Summary Judgment (Doc. No. 17) is

**DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of July 2019.


　　　　　　　　　　　　　　　　/s/ Janet C. Hall　　　　　　　　　　　　　＿＿
　　　　　　　　　　　　　　　　Janet C. Hall
　　　　　　　　　　　　　　　　United States District Judge